E-FILED
Thursday, 26 January, 2012 03:07:52 PM
Clerk, U.S. District Court, ILCD

SEP 1 8 2006

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,  ) Docket No. 05-cr-40051
)
    Plaintiff,  )
) Rock Island, Illinois
vs.  ) June 2, 2006
)
HARRY EDWIN MILES,  )
)
    Defendant.  )

**06-2899**

_____

## RECORD OF PROCEEDINGS
### SENTENCNG HEARING
BEFORE THE HONORABLE JOE BILLY MCDADE
UNITED STATES DISTRICT JUDGE

U.S.C.A. = 7th Circuit
FILED
MAY 18 2007  DW
GINO J. AGNELLO
CLERK
DOC. #

### THE APPEARANCES

JOHN K. MEHOCHKO, ESQ.
Assistant U.S. Attorney
1830 2nd Avenue
Rock Island, IL  61201-8003
On behalf of the Plaintiff

HARRY EDWIN MILES, PRO SE
Mercer County Jail
906 SW Third Street
Aledo, IL  61231

GEORGE F. TASEFF, ESQ.
401 Main Street, Suite 1500
Peoria, IL  61602
Stand-by counsel for the Defendant

Nancy Mersot, CSR, RPR
United States District Court Reporter
100 N.E. Monroe Street
Peoria, IL  61602

Proceedings recorded by mechanical stenography,
transcript produced by computer-aided transcription.

1          Proceedings were held in open court.)

2          THE CLERK:  Now comes the case of the <u>United</u>

3 <u>States of America v. Harry Edwin Miles</u>, case number

4 05-40051.

5          Will counsel please enter their appearances.

6          MR. MEHOCHKO:  John Mehochko for the United

7 States.

8          MR. MILES:  Harry Miles.

9          THE COURT:  And the record will reflect the

10 presence of stand-by counsel for the defendant,

11 George Taseff.

12          MR. MILES:  Your Honor, there are motions

13 and subpoenas before this Court that I wish to have

14 listened to.

15          THE COURT:  Mr. Miles, I don't need your

16 help right now.

17          On November 17th of 2005, the defendant was

18 found guilty after a jury trial on Counts I and II

19 of the indictment charging him with conspiracy to

20 distribute and possess with intent to distribute

21 cocaine and methamphetamine in Count I, and

22 possession with intent to distribute cocaine and

23 methamphetamine in Count II.

24          The matter is before the Court today for

25 sentencing.  In that connection the Court has before

1   it the Presentence Investigation Report, copies of

2   which have been furnished to the Government and to

3   Mr. Miles for comment pursuant to law and the rules

4   of criminal procedure and the local rules of this

5   court.

6        Before -- oh, the addendum to the report,

7   found at pages 18 through 28, purport to summarize

8   objections to the report from both the Government

9   and from the defendant.

10       The Court would note that there have been a

11  host of filings by Mr. Miles in relationship to a

12  sentencing.  And today it has been brought to my

13  attention that the defendant e-filed today several

14  motions.  The most pertinent one being a motion to

15  continue sentencing to a later date to allow time to

16  provide defendant a certified copy of all

17  transcripts of all trial testimony by all witnesses

18  so that he can prepare page and line designations

19  rebutting the Presentence Report as required by rule

20  32(c)(3)(D).  And in that motion, the defendant

21  lists the witness as being Trooper Kevin Winslow,

22  Sergeant Floyd Blanks, Deputy Brett Dynes, DEA Agent

23  Russell Coulter, and Trooper Clint Thulen, and

24  himself.

25       There are other motions relating to those

1 witnesses that was filed today by Mr. Miles. One of
2 them is a third amended subpoenas duces tecum for
3 production of copies of all transcripts of all trial
4 testimony involving witnesses and all pretrial
5 suppression hearing testimony for witnesses. And he
6 lists the same witnesses that he has mentioned in
7 his motion for a continuance.

8     And also there is filed, e-filed, June 1st,
9 by Mr. Miles, you wish a subpoena to be issued for
10 Assistant U.S. Attorney John Mehochko, who obviously
11 is Government counsel in this case. The caption is
12 subpoena for U.S. Attorney John K. Mehochko to
13 appear at sentencing and evidentiary hearing as
14 expert hostile witness.

15     And there is also filed June 1st, e-filed, a
16 subpoena duces tecum for production of documents
17 proving that this federal court has subject matter
18 jurisdiction within the State of Illinois.

19     Now, in connection with the motion to
20 continue the sentencing hearing based upon the
21 apparent desire for the defendant to have
22 transcripts of the testimony of various witnesses
23 who testified at the trial in this case. Mr. Miles,
24 I have denied your request for trial transcripts
25 before today. And I would like for you to tell me,

1  sir -- do you have a copy of the Presentence Report,

2  sir?

3        MR. MILES:  Yes, I do.

4        THE COURT:  Please tell me what paragraph of

5  the Presentence Report do you need each of those

6  witnesses to challenge?

7        MR. MILES:  The testimony of --

8        THE COURT:  No, sir.  Answer my question.

9        MR. MILES:  I don't have the Presentence

10 Report with me.

11       THE COURT:  I thought you said you did.

12       MR. MILES:  I have been given a copy of it.

13 I don't have one with me.

14       THE COURT:  Mr. Mehochko, will you please

15 loan Mr. Miles your copy of the Presentence Report.

16       MR. MILES:  Page three, paragraph three,

17 paragraph four, paragraph five, paragraph six --

18       THE COURT:  Mr. Miles, Mr. Miles, my

19 question for you is which paragraph of the

20 Presentence Report do you need each witness that

21 you've named to testify to?  Now paragraph four, you

22 mention paragraph four.

23       MR. MILES:  Paragraph three and -- paragraph

24 three.

25       THE COURT:  All right.  Which witness have

1 you named do you need to have his testimony to

2 challenge paragraph three?

3       MR. MILES: Russell Coulter, Trooper Clint

4 Thulen, and Sergeant Floyd Blanks.

5       THE COURT: In what sense, sir? What is it

6 you expect to challenge by their testimony?

7       MR. MILES: I don't know how to explain it

8 to you.

9       THE COURT: Well please try because that's

10 why otherwise I am going to deny it out of hand.

11      MR. MILES: So you can deny it again?

12      THE COURT: Please try to explain it or else

13 I'm going to deny your request out of hand for lack

14 of a showing.

15      MR. MILES: Well, that's what you've done

16 with every other motion that I've ever filed.

17      THE COURT: All right.

18      MR. MILES: The reasons are in my affidavit

19 stated in the declaration of objections.

20      THE COURT: Is that all that you have to

21 say, Mr. Miles?

22      MR. MILES: No.

23      THE COURT: Would you respond to my

24 question. This is your last chance to do it.

25      MR. MILES: I need the trial transcripts to

1 prove that Trooper Thulen gave false and misleading

2 testimony at presentence hearings and at the trial

3 which is contradicted by all of these officers'

4 testimony. And I can give page and line

5 designations to this court.

6 THE COURT: Mr. Miles, this is the last time

7 that I'm going to ask you. I asked you with

8 reference to paragraph three, what information in

9 paragraph three, do you expect any of your witnesses

10 to contradict?

11 MR. MILES: My trial testimony contradicts

12 paragraph three that I gave these quotes.

13 THE COURT: Fine. That means you don't need

14 any of the witnesses' transcripts that you listed in

15 your request.

16 MR. MILES: For paragraph three.

17 THE COURT: That's all we are talking about

18 right now is paragraph three. Okay. Go ahead.

19 What's your next paragraph that you think this

20 witness you would need, any of these witnesses to

21 challenge?

22 MR. MILES: Hold on.

23 All of the issues covered in the Presentence

24 Report under Rule 32, I have the right to be

25 sentenced under correct information. I am saying

1 that the testimony that Trooper Thulen gave is false
2 and misleading and that all of these other officers'
3 testimony will contradict Trooper Thulen's
4 testimony.  That is why I need all of the other
5 officers' testimony to contradict Trooper Thulen's
6 and then I can then give line and page designations
7 to the Court to show that inconsistency.

8        THE COURT:  The motion to continue
9 sentencing is denied as well as the motion for third
10 amended subpoena duces tecum for production of
11 copies of all transcripts, all trial testimony of
12 all witnesses and all pretrial suppression testimony
13 of all witnesses, as well the subpoena for U.S.
14 Attorney John K. Mehochko to appear, as well as
15 subpoena duces tecum for production of documents
16 proving that this federal court has subject matter
17 jurisdiction.  All of those motions are denied.

18        The Court will continue with the sentencing
19 and the Court would explain that the Court has
20 looked through the Presentence Report and it appears
21 to the Court that there is one witness mentioned by
22 the defendant that the Court believes that his
23 testimony could be material to the sentencing
24 hearing and that is Trooper Thulen.  And the Court
25 believes that any reading of the defendant's

1 numerous filings in this case will indicate that the
2 defendant's focus has been on Trooper Thulen and his
3 position that Trooper Thulen was not truthful in his
4 testimony.

5          And the Court notes that paragraph ten of
6 the Presentence Report relates to the defendant's
7 stop and arrest in which Trooper Thulen was involved
8 and Trooper Thulen was the only trooper who stopped
9 the defendant as indicated from the trial testimony.
10 And the Court has already provided Mr. Miles with a
11 transcript of Trooper Thulen's testimony both at
12 trial and at the suppression hearing.  And in the
13 Court's view there has been no need shown by
14 Mr. Miles to have any of the other persons he has
15 requested testimony, transcript testimony.  And the
16 Court also feels that the defendant's failure and
17 refusal to respond to the Court's inquiry that he
18 identify each paragraph of the Presentence Report
19 that he feels he needs any of these witnesses'
20 testimony to challenge, he has refused to answer
21 that and has given the Court a broad general request
22 which for the reasons I've explained, I deny or
23 refuse, and consider them immaterial.

24          So --

25          MR. MILES:  Your Honor, today, Mr. Mehochko

1 hand-delivered a copy of a receipt that shows that
2 my license was not in my possession. And this is
3 what I have been arguing the entire time.

4     THE COURT: Right, Mr. Miles, and that's why
5 all of these requests have been denied. That issue
6 has been determined at least twice, and it is not
7 relevant here to sentencing.

8     MR. MILES: This Court has never entered a
9 finding of fact or conclusion of law as to any of my
10 motions that I have filed in this case.

11     THE COURT: Well, that's your position,
12 Mr. Miles, and you will have the right to present
13 that to the appellate court.

14     MR. MILES: Which you're forcing me to file
15 a motion to the appellate court to remand this case
16 back to this Court in order for this Court to give
17 its finding of facts and conclusions of law of now
18 32 separate filings that you have never once given a
19 finding as to why you denied it.

20     THE COURT: Good, Mr. Miles. I'm glad that
21 you say that and that will be something for the
22 appellate court to consider.

23     Now if you please, let's get on with the
24 proceedings.

25     Mr. Mehochko, the addendum indicates that

1  the Government has no objections to the report; is

2  that still the case?

3         MR. MEHOCHKO:  Your Honor, we have no

4  objections.  I guess we have one clarification.

5  That there were some additional perjured statements

6  that we provided the Probation Officer.  Your Honor,

7  for clarification paragraph 64, refers to the

8  special assessment is $100.  It should be $200.

9  This is a two count conviction.

10        THE COURT:  The Court will modify paragraph

11 64 by interlineation to make the special assessment

12 $200 instead of $100.

13        MR. MEHOCHKO:  And then, Your Honor, it is

14 correct that the Government has no objections to the

15 Presentence Report; however, Mr. Walsh I think when

16 I originally sent the letter about the perjured

17 statements that was in response to the defendant's

18 objections asking for specific instances of perjury.

19 I sent Mr. Walsh a fairly exhausted list of perjured

20 statements by the defendant.  He included some of

21 those in the PSR. He included the rest of them in

22 the addendum because the defendant did not have an

23 opportunity to specifically respond to them.  I know

24 that Mr. Walsh treated those as objections.  And I

25 guess that I can be heard on those if the Court

1 would like or I'm not sure how the Court would like
2 to proceed.

3       THE COURT: What is the paragraph in the
4 Presentence Report that you are or has been treated
5 as an objection to the Government?

6       MR. MEHOCHKO: It would be paragraphs 14
7 through 16, the obstruction of justice enhancement.

8       THE COURT: All right. In connection with
9 the adjustment for obstruction of justice, the
10 Presentence Report, the Probation Officer takes the
11 position that the defendant did obstruct justice and
12 in one or more respects. Let's see what it says.
13 Paragraph 17 says in this case the defendant while
14 cooperating with agents placed an unauthorized phone
15 call to a coconspirator. Following this phone call,
16 the coconspirator stopped using the phone number
17 known by the investigative agents. The defendant's
18 conduct is directly akin to the concept of
19 destroying evidence and that informing his
20 coconspirator's of his arrest he effectively sent a
21 message alerting them that they may be next. This
22 phone call hampered the investigating agent's
23 ability to build a case against the defendant's
24 coconspirators and made it impossible to assess how
25 long the conspiracy has been active or if the

1 defendant's role in the conspiracy is more or less
2 significant than what he personally reported to
3 police. So probation is suggesting that that
4 amounts to obstruction of justice. And you're not
5 objecting to that, are you?

6 MR. MEHOCHKO: I am not objecting to that,
7 Your Honor, I guess it is more additional instances
8 of perjury that are not contained in the PSR.

9 THE COURT: Okay. So your objection is that
10 the Probation Officer did not include under the
11 section of the report dealing with adjustment for
12 obstruction of justice, your Government's position
13 is that the defendant committed perjury in one or
14 more respects?

15 MR. MEHOCHKO: That is correct, Your Honor.
16 And maybe I can just clarify that. The PSR
17 assigned the obstruction of justice enhancement
18 based on two separate things. The first being the
19 defendant's perjured testimony at trial. The second
20 thing being the phone call he made tipping off his
21 coconspirators.

22 There are two instances of perjury at trial
23 that are contained in the PSR and those are at
24 paragraphs, at paragraph 15. Paragraph 15 contains
25 the perjured statements at trial. Our objection is

1 just simply that there are additional perjured
2 statements at trial.

3      THE COURT:  I'm not so sure that I agree
4 with you.  Looking at paragraph 28 where the actual
5 adjustment is made for obstruction of justice, the
6 Probation Officer does not include perjury.  It
7 says, "The defendant has obstructed justice during
8 the course of the investigation and prosecution of
9 the instant offense.  Specifically he placed an
10 unauthorized phone call to a coconspirator while
11 acting as a cooperating individual and offered
12 materially false testimony at trial."

13      It does include both.  I stand corrected.

14      And what you are essentially asking is the
15 Court to consider the specifics of the materially
16 false testimony that probation notes in paragraph 20
17 -- is that right -- not paragraph -- paragraph 28
18 the, obstruction of justice adjustment.

19      MR. MILES:  Paragraph 28?

20      THE COURT:  The obstruction of justice
21 adjustment.

22      MR. MEHOCHKO:  I am asking the Court to
23 consider the specific statements that probation put
24 in paragraph 15 that lists out the statements as
25 well as the addendum paragraph one, which is the

1 chart listing the additional instances of perjury

2 that I provided to the Probation Department. And

3 then those perjured statements are the reason for

4 the enhancement in paragraph 28 but they are

5 actually contained elsewhere in the PSR.

6        THE COURT:  All right.  Did you wish to

7 argue the point?

8        MR. MEHOCHKO:  Yes, Your Honor.

9        THE COURT:  And I'm asking now for argument

10 with reference to your view that the defendant

11 committed perjury at the trial.

12       MR. MEHOCHKO:  I have listed the specific

13 page and line designations.  And I have here a copy

14 of Mr. Miles's trial testimony which has been marked

15 as Government's Exhibit A which I will like to

16 submit that for purposes of sentencing.

17       THE COURT:  All right.  Can we use the

18 addendum where your specific charges of perjury are

19 a template here?

20       MR. MEHOCHKO:  Yes, Judge.  And that is what

21 I plan to do is just specifically run through those.

22 And then the addendum does list them out.  Page

23 four, paragraphs 13 through 17, the defendant denied

24 giving Trooper Thulen permission to enter the RV,

25 that is in contrast to the Court's finding at the

1 motion to suppress and in contrast to Trooper

2 Thulen's testimony as well.  He testified that he

3 believed that he had permission to enter the RV.

4 That wasn't explicit verbal permission but it was

5 the defendant stepping back and allowing him to

6 enter.  So we believe the defendant committed

7 perjury in that instance at trial.

8        Would you like me to argue all of them,

9 Judge?

10       THE COURT:  One at the time, please.  Are

11 you done with that one?

12       MR. MEHOCHKO:  I am done with that one.

13       THE COURT:  All right.  The Court -- did you

14 wish to say about that, Mr. Miles, that particular

15 charge of perjury?

16       MR. MILES:  Not at this time.

17       THE COURT:  All right.  The Court does not

18 believe that that was perjury, so I will deny

19 perjury on that count.  Go ahead.

20       MR. MEHOCHKO:  Next instance, Your Honor,

21 page five, line six through 17.  Mr. Miles's

22 testimony in which he says, he is asking himself

23 questions at trial.

24       Question:  When you open the door, unlatch

25 the door to your motor vehicle what happened?

1        Answer:  Trooper Thulen grabbed the door and

2   put his foot inside the threshold.  And as I lowered

3   the step for myself to let myself out, as soon as it

4   was all the way down, he immediately stepped into

5   the Coach forcing me back up.  He came in so fast

6   that he actually made my stumble backwards inside

7   the vehicle and fall back down on the couch inside

8   the Coach.

9        The Government submits that that is perjury.

10  That Trooper Thulen never did that.  He testified

11  that he didn't do that and that is blatant perjury

12  by the defendant.

13       MR. MILES:  This is not material, Your

14  Honor.  It is a nonmaterial statement.

15       THE COURT:  Did you wish to -- is that your

16  response to that one?

17       MR. MILES:  Yes.  So my testimony

18  contradicts Trooper Thulen's testimony, that doesn't

19  mean that I committed perjury.

20       THE COURT:  I agree.  I don't find you

21  committed perjury there.

22       Go ahead, Mr. Mehochko.

23       MR. MEHOCHKO:  Page seven, lines five

24  through six, Your Honor.  Mr. Miles testifying again

25  about Trooper Thulen during the traffic stop.

```
 1          He says, Trooper Thulen, picked up my wallet
 2 and took out my license, and then he said I might as
 3 well check your license while I am here.  I'm pretty
 4 confident these guys looked at your driver's
 5 license.
 6          THE COURT:  See, page seven.
 7          MR. MEHOCHKO:  I don't think that's correct,
 8 Judge.  We will withdraw that one.
 9          Move on to page 13.
10          THE COURT:  Okay.
11          MR. MEHOCHKO:  Page 13, line six, Mr. Miles
12 saying, "No, I did not feel that I was free to leave
13 because he was still inside my RV," meaning Trooper
14 Thulen.  "And I couldn't just drive off with a
15 police officer inside my vehicle.  He also wouldn't
16 give me back my driver's license and paperwork even
17 after I told him that I wished to leave.  And once I
18 had asked him if I was under arrest, he told him no.
19 I even had gone so far to stand up and to hold out
20 my hand for him to give me my license and it is at
21 that point his whole demeanor changed."
22          Trooper Thulen testified that he gave the
23 defendant his license and paperwork back at the
24 conclusion of the traffic stop.  He certainly never
25 refused a request by the defendant to have his
```

driver's license refused.  This is a Court issue on

the motion to suppress that the defendant simply

would not give up at trial.  I submit that it was

certainly material and absolutely perjury.

THE COURT:  All right.  Mr. Miles, did you

wish --

MR. MILES:  Same argument.  I stand by my

testimony.  It is in conflict with the officer's and

I believe the officer is lying.

THE COURT:  Well, the Court would not find

perjury for one reason, as I recall the testimony,

what I believe happened is that defendant's license

was sitting, laying on the seat, and the defendant

referred to his license, if the trooper was going to

look at it, the trooper picked it up and looked at

it, then put it back on the seat.  So he didn't give

it back to the defendant.  He didn't keep it either.

So I think that's just the defendant looking at that

through his own prism, different type of glass.  And

I'm not going to say he lied, but I felt that the

defendant's license was still there in his

possession on the seat and he could have left.  So,

here again I don't feel that that was perjury.

MR. MEHOCHKO:  Next one, Judge, I think that

this one is going to address that concern.  Page 14,

 1  line one, again, Mr. Miles asking himself questions
 2  referring to the traffic stop.
 3         "So why did you stay by the side of the road
 4  while the troopers are doing the canine search?"
 5         "Answer:  I stayed by the side of the road
 6  because Trooper Thulen still had my license in his
 7  hands.  He still had my wallet.  He also had the
 8  previous warning tickets.  I couldn't just drive
 9  off."
10         That is in stark contrast with Trooper
11  Thulen's testimony and is perjury, Your Honor.
12         MR. MILES:  That can't be perjury, that is
13  my testimony which is in direct contradiction with
14  Trooper Thulen, and I still contend that he never
15  gave me back my license.  You even gave me a
16  receipt, not a receipt, but an inventory that shows
17  that they still had my license even after I was
18  arrested.  And he gave that to us today even.  "Even
19  though in light of the defendant's recent court
20  filings out of an abundance of caution, we wish to
21  bring it to your attention."  That was straight
22  Brady material that was never turned over to me
23  prior to trial.
24         THE COURT:  As I recall the testimony, I
25  think it was Mr. Miles himself who said his license

1 was lying on the seat, his passenger seat.  And that

2 Trooper Thulen had the warning tickets in his hand,

3 was about to give it to him and he said to him,

4 "Aren't you even going to look at my license that

5 was on the seat?"  So, until that time, Trooper

6 Thulen, even by Mr. Miles's testimony, did not have

7 his license in his hand outside of the vehicle.

8         So my recollection of the testimony is that

9 Mr. Miles is probably lying there when he says that

10 Trooper Thulen had his license and the warning

11 ticket outside of the motor vehicle.  I don't think

12 that's what happened.  On the other hand, I find

13 that the --

14         MR. MILES:  That's still not material, Your

15 Honor.

16         THE COURT:  -- the obstruction of justice

17 found by probation in the telephone call that the

18 defendant made to the codefendant is a

19 unquestionably material thing that happened, that

20 impeded the investigation of this whole conspiracy,

21 and you don't get but two levels for obstruction

22 whether there are ten instances or one instance.

23 And I would rather stick with the obstruction by the

24 phone call than to get bogged down in a verbal

25 dispute as to these details.

1       So even though I think the defendant

2  probably is lying here, I don't feel that it was

3  sufficiently material that impeded the investigation

4  or prosecution of this defendant.

5       So here again, I'm going to deny that as an

6  obstruction.

7       MR. MEHOCHKO:  Judge, I will skip over some

8  of these.  I would like to make a record on these.

9       THE COURT:  Okay.

10       MR. MEHOCHKO:  Paragraph page 28, lines 15

11  through 17.

12       THE COURT:  Well, don't skip over page 27

13  because, I'm not so sure here, again, it seems to me

14  this is a clear one.  Will you please discuss page

15  27?

16       MR. MEHOCHKO:  Page 27, line 24 through page

17  28, line through 15 talking about Trooper Thulen and

18  the dog in the RV.  Miles asking himself the

19  question -- I'm sorry, this is me cross-examining

20  the defendant.

21       "And that's why you let Officer Thulen run

22  his dog around his RV, didn't you?"

23       Answer by Mr. Miles:  "I did not let Officer

24  Thulen take the dog around my RV.  Officer Thulen

25  took it upon himself to do that.  I never gave him

1  permission to take his dog around my RV."

2          Question:  "Mr. Miles, Felipe and Pete,

3  defendant's coconspirators, told you that a drug dog

4  wouldn't be able to detect the drugs hidden in the

5  compartment, didn't they?"

6          Answer:  "That is incorrect."

7          "That's the reason that you let Officer

8  Thulen run his dog around the RV, isn't it?"

9          Answer:  "I did not.  Like I said, I did not

10 let Officer Thulen take his dog around my RV.

11 Officer Thulen took it upon himself to take his dog

12 around my RV.  I do not have anything to do with

13 drugs.  I deny that the drugs were even found in my

14 motor home."

15         THE COURT:  Okay.  Mr. Miles, do you wish to

16 respond to the suggestion that you committed perjury

17 when you denied giving authorization for Trooper

18 Thulen to run his dog outside your RV?

19         MR. MILES:  It has been my standing all

20 along that I would -- that Trooper Thulen took it

21 upon himself after telling me he was going to take

22 his dog around my vehicle without my permission, he

23 told me and I acquiesced, that has been my position

24 from the start.

25         THE COURT:  Did he ask you to allow him to

 1 take his dog inside your RV?

 2          MR. MILES: Yeah, and I told him no.

 3          THE COURT: So he said outside and what did
 4 you say?

 5          MR. MILES: I asked him was I under arrest.

 6          THE COURT: Did you tell him no, he could
 7 not outside?

 8          MR. MILES: No, my question to him was, was
 9 I under arrest. His answer to me was no.  My
10 question to him then is why do you want to do that?
11 He said it is kinda my job.

12          THE COURT: Did you tell him, like you told
13 him he could not use his dog inside the vehicle, did
14 you tell him that he could not use his dog outside
15 the vehicle?

16          MR. MILES: I did tell him that, yes, that I
17 didn't want the dog -- didn't want him -- I told him
18 that I wished to leave and he told me I'm going to
19 do a dog sniff. He was no longer asking me, he told
20 me.

21          THE COURT: And what did you say about his
22 intent to do a dog sniff?

23          MR. MILES: I want to leave.

24          THE COURT: You didn't say you can't do it
25 inside the RV?

25

1      MR. MILES:  I did say to him I don't want
2  the dog inside the RV.

3      THE COURT:  Did you say that you didn't want
4  the dog outside the RV?

5      MR. MILES:  I don't recall the exact
6  conversation at this time, but I did tell him that I
7  wished to leave.  As soon as I told him that then he
8  told me he was going to do a dog sniff, he no longer
9  asked me, he told me he was going to do a dog sniff.

10      THE COURT:  Here again --

11      MR. MILES:  So I acquiesced to a consent
12  which cannot be deemed valid.

13      MR. MEHOCHKO:  Judge, if I can just add one
14  thing.

15      THE COURT:  Yes.

16      MR. MEHOCHKO:  Trooper Thulen after the
17  defendant said he wanted to get going, Trooper
18  Thulen said I'm going to do a dog sniff of the
19  outside of the RV.  He asked the defendant if that's
20  okay.  The defendant said okay.

21      THE COURT:  My recollection is that's what
22  happened, too.  Again, even though you think the
23  defendant is lying and has lied, I much prefer to
24  stand on the other basis for obstruction of justice.
25  So I would deny that one.

1     MR. MEHOCHKO:  The next one, Judge, and I

2  think this goes to the heart of the case, heart of

3  one of the elements of the case.  The defendant

4  denied having anything to do with the drugs and

5  denied that the drugs were even found in the RV.

6  Everybody in this case testified that the defendant

7  confessed to almost everyone that he talked to that

8  he knew that he was driving drugs to Chicago.  He

9  knew there were drugs in the RV.  He knew there had

10  been a hidden compartment constructed in the RV and

11  the drugs were in fact pulled out of the RV.

12          THE COURT:  Page 28, line --

13          MR. MEHOCHKO:  Page 28, lines 15 through 17.

14          THE COURT:  Oh, yes.  He does say, paragraph

15  16, "I deny that the drugs were ever found in my

16  motor home."

17          MR. MEHOCHKO:  And this was part of the

18  defendant's government conspiracy defense that the

19  state police constructed the hidden compartment and

20  put 150 pounds and eight pounds of meth in there.

21          THE COURT:  Mr. Miles, do you wish to

22  respond to that basis for a perjury adjustment?

23          MR. MILES:  I stand on my testimony.

24          THE COURT:  Here --

25          MR. MILES:  It is not material.

1          THE COURT:  Here again, the defendant finds

2    that the defendant did lie when he denied that drugs

3    were even found in his vehicle.  And I completely

4    reject the defendant's fantasy that the government

5    planted this huge -- first of all, manufactured this

6    hidden compartment all within 24 hours, and also

7    planted this huge quantity of drugs in his vehicle.

8    I think this is a fabrication on his part.  And I

9    think he is -- he did lie when he said that, but

10   here again, I'm not disposed to find obstruction of

11   justice.

12         MR. MEHOCHKO:  Judge, could I just ask for

13   clarification on the Court's ruling?  I'm not

14   certain.  The guideline section certainly

15   contemplates perjury at trial being grounds for

16   obstruction of justice.  This defendant took the

17   stand.  Told a fantastic tale.  Perjured himself

18   extensively.  I would submit that that is prima

19   facie case of obstruction of justice and I'm not

20   sure if there is something that I'm missing.

21         THE COURT:  Well, okay, let me go through my

22   reason, perhaps I'm missing the boat.  I don't

23   recall -- I don't recall testimony that the drugs

24   were taken from the vehicle in Mr. Miles presence so

25   that he could have seen it with his eyes.  I don't

1 recall that testimony. I don't know if they were
2 taken away from him in his presence. So if they
3 were not taken away from him in his presence, I
4 presume that it's not outrageous for someone to say
5 where they were planted. Now did -- was that
6 testimony that they were recovered from the vehicle
7 in his presence where he could have seen them had
8 his eyes been open?

9 MR. MEHOCHKO: Trooper Thulen testified that
10 they used a drill bit to drill into the hidden
11 compartment while the defendant was on the side of
12 the road, that would have been visible to the
13 defendant. The defendant -- there was testimony
14 from all of the other agents about the defendant's
15 confession that he was told he was carrying drugs in
16 this hidden compartment. He knew that he was
17 transporting drugs from Chicago -- from California
18 to Chicago, and certainly claimed that he didn't
19 know anything about any drugs and didn't have
20 anything to do with any drugs goes to the core of
21 the intent element and he is attempting to subvert
22 justice by perjuring himself on that particular
23 ground.

24 THE COURT: Now can you answer my question.
25 Was there testimony that drugs were actually

1 taken -- I don't mean drilling a hole -- I mean
2 where that compartment opened and the package -- we
3 saw the packages in court here.

4 MR. MILES: No, there was not, Your Honor.
5 And there is no videotape evidence that the drugs
6 were ever found in that vehicle.

7 MR. MEHOCHKO: Your Honor, I can't point at
8 any testimony. I'm told that the defendant was
9 there, but I can't represent to the Court that there
10 was testimony to that effect at trial, but I can
11 tell you that he did admit to knowing that he was
12 transporting drugs and being involved in the
13 transport of drugs. So his statement that "I did
14 not have anything to do with drugs" is false.

15 THE COURT: I understand the Government's
16 position and the Court does not want to prolong
17 justice in this case and to the extent my rulings, I
18 think, are sustainable before the appellate court,
19 so that justice can be done. I would prefer to go
20 that route. Certainly common sense tells me that
21 this defendant had to know what was in that vehicle.
22 But for purposes of this adjustment and the fact
23 that it could be appealed, I will prefer to find
24 perjury if I can say to the appellate court, this
25 huge amount of drugs were taken away out of this

1 vehicle in this man's presence. He saw them being
2 taken out and then he testified in court that he
3 didn't know they were there, he's lying.

4 So without that evidence, even though I can
5 agree with you in my heart, I know he knew they were
6 there, I do not want to give a perjury adjustment on
7 that basis. I think that that would just prolong
8 and extenuate the administration of justice here.

9 MR. MEHOCHKO: The next one, Your Honor,
10 page 28, lines 22 through page 29, line 9, the
11 defendant told the officers on the side of the road
12 that he would rather do federal time instead of
13 state time, which would indicate his knowledge that
14 he was in fact guilty of the drug trafficking.

15 THE COURT: I refuse as obstruction. Go
16 ahead.

17 MR. MEHOCHKO: Page 29, line ten through 13,
18 Miles denied ever telling Trooper Thulen that he was
19 taking the RV to the Hampton Inn for someone to
20 pickup in Chicago. Trooper Thulen testified that
21 Mr. Miles did in fact make that statement about
22 dropping off the drugs for pick up. That also jives
23 with the testimony that Mr. Miles gave to or his
24 confession that he gave to other officers as well
25 about the pickup site, that being Trooper Winslow as

well.  Trooper Winslow also testified that he told
him that.  This was on the side of the road after
the trooper responds -- after Trooper Thulen had
discovered the drugs and Trooper Thulen began
questioning the defendant about where he was going,
the defendant immediately said that he wanted to
cooperate, wanted to do federal time instead of
state time.  Trooper Thulen asked him where the
drugs were going and that's when the defendant told
Trooper Thulen that they were going -- he was taking
the RV to the Hampton Inn in Chicago where someone
else would pick it up.  He made that same statement
to Trooper Winslow after Winslow arrived that the RV
was going to the Hampton Inn in Chicago.  At trial
he denied ever making those statements to the
officers.  He accused the officers of lying.

THE COURT:  With reference to the alleged
perjury on page 29 paragraph 10 through 13 in which
the defendant denied telling Trooper Thulen that he
was taking the RV to the Hampton Inn in Chicago,
Illinois, I think that is sustainable.  I think the
defendant did lie there.  It is not just a
coincidence that his friend was at the Hampton Inn.
So I think I will make a finding that he committed
perjury on that one.

1          MR. MEHOCHKO:  The next one is page 29

2    paragraph or lines 14 through 18 a follow-up

3    question to that was, "that someone would pick it

4    up, being the RV, and unload the drugs, didn't you,"

5    told Trooper Thulen that.

6          Answer:  No, I did not.  I told him that I

7    was going to visit a friend of mine that I graduated

8    high school with in Franklin.

9          It is true the defendant did claim he was

10   going to go visit a friend from high school when

11   Trooper Thulen first pulled him over on the side of

12   the road.  After Trooper Thulen found the drugs and

13   after the defendant, told the trooper he rather

14   would do federal time than state time and after the

15   defendant admitted that he was dropping the RV off

16   at the Hampton Inn in Chicago, he also told him that

17   someone was going to pick up the RV and unload the

18   drugs there.  That's consistent with what the

19   defendant's coconspirators attempted to do during

20   the attempted controlled delivery.  And I submit

21   that that was a further instance of perjury by the

22   defendant.

23         THE COURT:  Well, page 29 allegation of

24   perjury all are one and the same as far as I'm

25   concerned.  So I find that there is perjury in

1  connection with his denying that he told authorities
2  that he was taking the RV to Hampton Inn where
3  someone picked the drugs up.  I find that's the
4  truth.  He lied about that.  I don't see the need to
5  make it anymore specific.  So I think all of those
6  are considered one perjury about the incident of
7  where he was taking the RV and someone was picking
8  it up.

9          MR. MEHOCHKO:  Statements from Trooper
10  Thulen and Trooper Winslow from lines 10 through 22
11  then, Judge.

12          THE COURT:  Yes.

13          MR. MEHOCHKO:  The next one would be
14  Defendant Miles's testimony on page 29, line 23
15  through page 30, line two:

16          Question again by me, "And you gave him the
17  phone number for Pete, didn't you?"  This would be
18  Trooper Winslow.

19          Answer from the defendant, "No, they took
20  phone numbers out of my cell phone and asked me to
21  start calling people that I know."

22          Question:  "And you gave them a phone number
23  for Gordito, didn't you?"

24          Answer:  "No."

25          THE COURT:  Mr. Miles, do you wish to make a

1  response?

2        MR. MILES:  I stand by my testimony.  This

3  is not material.

4        THE COURT:  I find he committed perjury

5  there, too.

6        MR. MEHOCHKO:  Page 32, line 12 through page

7  33, line six.  Again, this is talking about the

8  transfer of the RV to Pete, but now the defendant is

9  elaborating on his lie that he told the jury.  He is

10 claiming that the purpose of Pete picking him up was

11 to do some repairs on the RV, specifically page 32

12 line 12, "And you and Pete discussed how the

13 transfer of the RV was going to work, didn't you?"

14        Answer:  "We discussed him doing some

15 repairs on my RV, that is correct."

16        Question:  "Repairs on your RV?"

17        Answer:  "That is correct."

18        Question:  "This is at midnight?"

19        Answer:  "When he came back from the ball

20 game, yes.  Originally, he was going to do the

21 repairs on the vehicle in the evening, then he

22 decided he was going to do them early in the

23 morning."

24        Question:  "By repairs you mean remove the

25 drugs from the hidden compartment?"

1          Answer:  "No, I do not.  Like I told Trooper

2     Thulen when he pulled me over, I had several items

3     inside my vehicle, the stove and the heater that

4     weren't working and Pete was going to fix them for

5     me."

6          That's not what he told the officers.  He

7     told them that they were going to unload the drugs.

8          THE COURT:  Mr. Miles, any comment?

9          MR. MILES:  I stand by my testimony.

10         THE COURT:  I deny perjury on that one.  And

11    I also denied perjury on the one about drugs in the

12    RV.

13         So that takes care of the Government's

14    objections.

15         Now with reference to defendant's

16    objections, according to the addendum the first

17    objection references page three through nine,

18    paragraphs one through 27.  The defendant objects to

19    the drug quantities and all narratives alleging his

20    involvement in the distribution of controlled

21    substances as described in these paragraphs.

22         Did you wish to argue your objection beyond

23    what is summarized in the addendum, Mr. Miles?

24         MR. MILES:  I believe that the summary in

25    the addendum is inadequate and I request that my

1 affidavit and declaration of objections to the
2 Presentence Report be attached to the Presentence
3 Report.

4      THE COURT:  The Court adopts the Probation
5 Officer's position.

6      The next objection references pages four and
7 five, paragraphs six through eight.  The defendant
8 indicates that he objects to the use of the
9 information presented in these paragraphs.  He
10 states that he requested this information in
11 pretrial discovery motions during the first part of
12 August 2005 but did not receive the information
13 prior to trial.  He argues that use of this material
14 is a violation of Brady v. Maryland.

15      He further states that the information
16 claimed to have been taken by defendant post Miranda
17 interview is incomplete and contains misquotes of
18 things the defendant did not say and is therefore
19 false.  And his arguments are supplemented in the
20 defendant's affidavit.

21      Anything you wish to add to that summary,
22 Mr. Miles?

23      MR. MILES:  I wish to attach my affidavit
24 and declaration of objections to the Presentence
25 Report in its entirety to the PSR.

1           THE COURT:  Okay.  The Court adopts the
2  Probation Officer's position.

3           The next objection three is to page,
4  references page five, paragraph ten.  And in summary
5  is that the defendant objects to the statement in
6  this paragraph that he agreed to allow the search of
7  his vehicle by the Illinois State Police trooper who
8  conducted the traffic stop.  The defendant indicates
9  he specifically indicated to the trooper that he was
10 not giving consent to the trooper to such as
11 temporary residence, the RV home.  The defendant's
12 arguments are supplemented in the defendant's
13 affidavit.

14          Did you wish to add anything to that
15 summary, Mr. Miles?

16 .        MR. MILES:  Again, my argument is in my
17 affidavit and declaration of objections to the
18 Presentence Report.

19          THE COURT:  The Court adopts the Probation
20 Officer's position.

21          Objection four in the addendum, the
22 defendant references page five and six, paragraph
23 12, which relates to the drug weight.

24          The defendant objects to being held
25 accountable for the drugs described in this

1  paragraph.  He agrees that this is unproven and

2  unsubstantiated hearsay as the Court records and

3  files clearly show that the U.S. Attorney never

4  submitted or filed any quote "competent evidence"

5  close quote, or made any quote "offer of proof"

6  close quote, that the defendant had any personal

7  knowledge of the presence of any illegal drugs or

8  narcotics contained in his RV mobile home.  He

9  further objects to the reported drug weights and

10  purity reported in this paragraph.  The defendant

11  indicates he has no way to confirm, deny and/or

12  contest the validity of any alleged drug weights or

13  laboratory analysis or alleged percentages of purity

14  of drugs or if there really were any drugs in his RV

15  mobile home.  The defendant's argument is

16  supplemented in the defendant's affidavit.

17        Did you wish to add anything to the summary

18  of your objection as stated in the addendum?

19        MR. MILES:  No.  I wish to attach my

20  affidavit and declaration to the Presentence Report.

21        THE COURT:  The Court adopts the Probation

22  Officer's position.

23        MR. MEHOCHKO:  Judge, for the record, I

24  would just like to complete the record.  I have a

25  copy of the drug report that was provided to

1 Mr. Miles that contained the purity analysis.  I
2 would like to admit that as Government's Exhibit B
3 just so the record is complete, a purity analysis
4 issue.

5          And I would also note for the record that
6 the chemist testified at trial, although did not
7 testify to the purity, testified to the weight of
8 the cocaine, the weight of the methamphetamine and
9 the accreditation from the United States police lab.

10          THE COURT:  Objection number five of the
11 addendum relates to pages six through eight,
12 paragraphs 14 through 19.  And these paragraphs
13 relate to the obstruction of justice adjustment that
14 was given and which has been supplemented by
15 discussion here today.  The defendant objects to the
16 description of his conduct in these paragraphs.  The
17 defendant maintains he is innocent of the charges
18 against him and did nothing to obstruct or impede
19 the investigation in this offense.

20          The defendant states that the Government has
21 failed to submit or file any competent evidence or
22 any offer of proof to substantiate any of the
23 speculative and hearsay statements in paragraphs 14
24 and 16.  The defendant argues that information in
25 paragraph 14 is based on the perjured testimony of

1 the witness. As to paragraph 17, the defendant
2 affirmatively denies that he ever made any phone
3 call to any coconspirator or conspirators or sent
4 them in message alerting them that they may be next.
5 The defendant maintains that there is an absence of
6 any competent evidence filed by the U.S. Attorney
7 that would support the ipydisic (phonetically) and
8 unsubstantiated speculation that the defendant had
9 obstructed justice in any form. The defendant's
10 arguments are supplemented in the defendant's
11 affidavit.

12      Mr. Miles, did you wish to put on any
13 evidence or add anything to the summary of your
14 argument set out in the addendum?

15      MR. MILES: I wish to attach my affidavit
16 the and declaration of objections to the Presentence
17 Report as this Court has never made any findings,
18 specific findings at any time on any motion or any
19 activity that was alleged in this case.

20      THE COURT: The Court adopts the Probation
21 Officer's position.

22      Objection number six in the addendum,
23 references page eight paragraph twenty, which
24 relates again to acceptance -- the adjustment for
25 acceptance of responsibility in which the Probation

1 Officer took position that the defendant had not
2 accepted responsibility for his criminal conduct.

3       That and quoting from paragraph twenty, "The
4 defendant maintains his innocence and denies any
5 participation and conduct charge against him.  He
6 has accused the law enforcement of a conspiracy to
7 convict him through lies and the planting of
8 evidence."

9       The defendant has not accepted
10 responsibility for his criminal conduct.  The
11 addendum summarized the defendant's objection to
12 this paragraph as follows:  The defendant agrees
13 that he maintains his innocence and denies any
14 participation in conduct charged against him and
15 again argues as to the perjured testimony of a
16 witness.  The defendant's arguments are supplemented
17 in the defendant's affidavit.

18       And the defendant's affidavit has been
19 filed, has been e-filed in this case.

20       Mr. Miles, did you wish to present any
21 evidence or additional argument in connection with
22 this objection?

23       MR. MILES:  I still maintain my innocence.
24       THE COURT:  The Court adopts the Probation
25 Officer's position.  And the Court would also

1  indicate that the only testimony of Mr. Miles that
2  the Court would even consider in connection with
3  these objections is the sworn testimony under oath.
4  The Court is not considering some affidavit which he
5  has filed as part of his objections to the
6  Presentence Report.  It is not subject to
7  cross-examination at the sentencing hearing, so
8  therefore I'm not giving any consideration to it.
9       Objection seven references page nine
10  paragraph 24, 28 and 30.  Paragraph 24 relates to
11  base offense level, based on the amount of illegal
12  drugs the defendant is held accountable for.
13  Paragraph 28 is the adjustment for obstruction of
14  justice, and paragraph 30 is the failure to give the
15  defendant any adjustment for acceptance of
16  responsibility.  And the addendum summarizes the
17  defendant's objection to these paragraphs as being
18  based on his prior objections, the defendant objects
19  to receiving any points assigned to him under the
20  United States Sentencing Guidelines and these
21  paragraphs.
22       Did you wish to add anything, any argument,
23  Mr. Miles?
24       MR. MILES:  Just to attach my Rule 32,
25  affidavit and declaration of objections to the

1  Presentence Report.

2      THE COURT:  The Court adopts the Probation

3  Officer's position with the additional reason based

4  on the Court's findings in this case, the Government

5  believes that the base offense level and the

6  specific offense adjustments and the acceptance of

7  responsibility adjustment are all appropriate and

8  proper in this case.

9      Objection number eight in the addendum

10  references pages 15 and 16 and paragraph 56 through

11  62.  And these paragraphs relate to sentencing

12  options.  And the addendum summarized the

13  defendant's objections as being the defendant

14  objects to any prison sentence and/or any

15  probationary type of conditions being placed upon

16  him including mandatory drug testing.  The

17  defendant's arguments are supplemented in the

18  defendant's affidavit.

19      The Court would consider the defendant's

20  arguments as additional arguments as set forth in

21  his affidavit.

22      Did you wish to add anything to arguments

23  you made?

24      MR. MILES:  I object to any prison sentence

25  and any probationary type of conditions being placed

 1 upon me including mandatory drug testing based upon
 2 perjured testimony at trial that he didn't give me
 3 back my driver's license as proof and false
 4 testimony and the testimony of three other law
 5 enforcement officers and testimony of myself and my
 6 written inventory receipt given to me at booking at
 7 jail and Trooper Thulen's testimony given at the
 8 pretrial suppression hearing that contradicted his
 9 testimony given at trial.

10         THE COURT:  The Court adopts the Probation
11 Officer's position supplemented by the Court's
12 findings here.

13         Objection number nine, summarized in the
14 addendum relates to paragraph 66 of the Presentence
15 Report.  And paragraph 66 relates to applicability
16 of the Criminal Fine Improvement Act of 1987.  The
17 defendant's objection is as summarized, the
18 defendant objects to any fine alleged against him.
19 He states that the Presentence Report had identified
20 that he has no means to pay a fine.  He further
21 argues that it is an impossibility of law to pay
22 this alleged debt with federal reserve notes.  As
23 Title 18 Section 8 of the United States Code
24 defines, a federal reserve note as an, quote,
25 "obligation of the United States," close quote.

1  Said notes are nothing more than evidence of a debt
2  or credit instrument that does not even rise to the
3  level of a negotiable instrument, under Article 3 of
4  the Uniform Commercial Code.  Further, you can pay a
5  debt at law with yet another debt.

6       The defendant states that the Court having
7  taken an oath to support both state and federal
8  constitutions has no statutory authority to enforce
9  payment of any fines whatsoever in other than gold
10 and silver bagged money as the United States has
11 shirked its responsibility and requirement that it
12 print and circulate gold and silver bagged money.
13 It is impossible to pay any fines until the
14 Government starts printing gold and silver bagged
15 money again as required by Article 1, Section 10 of
16 the United States Constitution.

17       Did you wish to add anything to your
18 argument on this objection, Mr. Mile?

19       MR. MILES:  No.

20       THE COURT:  The Court adopts the Probation
21 Officer's position.

22       MR. MILES:  And Probation Officer's position
23 was what?

24       THE COURT:  That the defendant does not have
25 the ability to pay a fine.

1          MR. MILES:  All right.

2          THE COURT:  The last objection, objection

3 ten summarized in the addendum, the defendant

4 objects to references page three through 17

5 paragraphs one through 68.  One through 68 is the

6 entire Presentence Report except for the

7 recommendation section.  The objection of the

8 defendant as summarized in the addendum that the

9 defendant objects to the entire Presentence Report

10 on the grounds that the trial court judge rubber

11 stamped the U.S. Attorney's misstatements and

12 misquotes of the law in regard to the clarity and

13 direct violation of the defendant's speedy trial

14 rights.  The defendant's arguments are supplemented

15 in the defendant's affidavit.

16          In connection with this objection, the Court

17 would consider the defendant's affidavit as it

18 relates to this objection.

19          Did you wish to add anything to your

20 objection, your argument, Mr. Miles?

21          MR. MILES:  I wish to attach my entire

22 affidavit of declaration to the objections to the

23 Presentence Report that was filed Wednesday,

24 March 29th.

25          THE COURT:  The Court adopts the Probation

1  Officer's position.  And the Court based on the
2  Court's findings and ruling in connection with the
3  objections by both sides, the Court adopts the
4  Presentence Investigation Report without change
5  except for the additional findings of perjury to
6  support an adjustment for obstruction of justice as
7  mentioned here today.

8        Mary, does any count carry a mandatory
9  minimum.

10       PROBATION OFFICER:  Both Count I and II,
11 Your Honor, carry a mandatory minimum of ten.

12       THE COURT:  Okay.

13       MR. MEHOCHKO:  Judge, can I interrupt just
14 one moment.  It has occurred to me as we've gone
15 through these objections here for the record, we may
16 want to supplement the record with regard to the
17 obstruction of justice enhancement, specifically the
18 phone calls that the defendant made, the
19 unauthorized phone calls that the defendant made.
20 We attempted to introduce those phone records at
21 trial.  The Court may recall that's when the
22 defendant ripped up the stipulation in front of the
23 jury.  He has objected to the fact of the
24 Presentence Report and I'm not sure whether there is
25 evidence in the record to support the fact that

1 those calls were made.

2      I would like to call Agent Coulter in an
3 abundance of caution to make sure that the record is
4 clear on appeal that those records were ordered up
5 and obtained and they determined that when these
6 calls were made and when those calls stopped just to
7 make sure.

8      THE COURT:  That's a good idea.  Sure, you
9 may call.

10      MR. MEHOCHKO:  United States calls Agent
11 Coulter.

12                RUSSELL COULTER,
13 after having been duly sworn, testified as follows:
14                DIRECT EXAMINATION
15 BY MR. MEHOCHKO:
16 Q.   Will you please state your full name, sir.
17 A.   Russell Coulter.

18      MR. MILES:  Your Honor, excuse me, but this
19 is Rule 16 material.  This was discovery that should
20 have been presented at trial, if it was to be
21 presented at all.

22      THE COURT:  Thank you, Mr. Miles.  I will
23 hear it.

24      You may continue counsel.

25 A.   Russell Coulter.

BY MR. MEHOCHKO:

Q.   How are you employed?

A.   Special agent with the Drug Enforcement
Administration.

Q.   How long have been a special agent with DEA?

A.   '97.

Q.   Part of your duties with DEA, were you the case
agent assigned to Mr. Miles's case?

A.   Yes.

Q.   Did you participate in the attempted controlled
deliver in Chicago?

A.   Yes.

Q.   And you were present when Mr. Miles was being
briefed on how the controlled deliver was to
proceed?

A.   Yes.

Q.   And he was instructed to follow the agent's
instructions about contact with the coconspirators?

A.   Yes.

Q.   The calls that he made were to be taped if at
all possible?

A.   Yes.

Q.   Now those controlled delivery procedure -- he
was arrested -- stopped, I should say, on May 15 of
2005; is that correct?

1  A.    That's correct.

2  Q.    And then this controlled delivery went up to

3  Chicago and then proceeded for a day or so, and then

4  ended up wrapping up on -- do you recall, sir, when

5  the controlled delivery -- how long the controlled

6  delivery lasted?

7  A.    Through the following day, May 16 approximately

8  4:00 in the afternoon.

9  Q.    I'm sorry, the defendant was stopped on May 16,

10  2005?

11  A.    Then it would have been May 17th.

12  Q.    The next day?

13  A.    The following day.

14  Q.    That is March 17th?

15  A.    Yes.

16  Q.    And that is contained in paragraph 10 of the

17  PSR.

18        So March 16th is a stop by Trooper Thulen?

19  A.    Correct.

20  Q.    That is approximately 2:00 in the afternoon?

21  A.    Yes.

22  Q.    Then you and the other agents went to Chicago

23  to do the controlled delivery?

24  A.    Yes.

25  Q.    And that proceeded throughout the following

1  day, May 17?

2  A.   That's correct.

3  Q.   And attempted to make contact with people the

4  defendant identified as Pete, the person who was to

5  pick up the RV?

6  A.   Correct.

7  Q.   Did you obtain contact telephone numbers for

8  Pete?

9  A.   Yes.

10  Q.   And how did you obtain those?

11  A.   Through the defendant.

12  Q.   Were those cell phone records?

13  A.   Yes.

14  Q.   Did you ultimately order those cell phone

15  records?

16  A.   I did.

17  Q.   And then same thing with Felipe or Gordito?

18  Those are two names that the defendant gave you for

19  the same person?

20  A.   Yes.

21  Q.   That's the person that arranged the delivery in

22  California?

23  A.   Yes.

24  Q.   Pete was the person to pick it up in Chicago?

25  A.   Correct.

1  Q.   Did Mr. Miles give you a contact telephone

2  number for Felipe or Gordito?

3  A.   Yes.

4  Q.   And did you cause those phone records to be

5  subpoenaed?

6  A.   Yes, I did.

7  Q.   You obtained those records?

8  A.   Yes, I did.

9  Q.   Then you had the cell phone numbers that

10  Mr. Miles had of himself, correct?

11  A.   Correct.

12  Q.   And he was able to keep that cell phone during

13  this attempted controlled delivery because he was

14  contacting Pete and attempted to deliver the drugs?

15  A.   Yes.

16  Q.   Now the controlled delivery was terminated at

17  approximately 4:00 p.m. on May 17th?

18  A.   Correct.

19  Q.   And what were you doing at approximately 4:00

20  p.m. on May 17?

21  A.   Standing in the parking lot at the Hampton Inn

22  in Cicero, Illinois.

23  Q.   Was the defendant authorized to make any

24  telephone calls to any of the coconspirators after

25  the attempted controlled delivery was terminated?

1  A.    No.

2  Q.    Either you or any of the other agent authorized

3  that?

4  A.    No, sir.

5  Q.    You did cause the cell phone records of Felipe

6  or Gordito and Pete, the two people identified by

7  the defendant, to be obtained?

8  A.    Yes.

9  Q.    And you analyzed those cell phone records?

10  A.    Correct.

11  Q.    You prepared a chart; is that correct?

12  A.    Yes.

13  Q.    This is originally a chart to be used at trial?

14  A.    Yes.

15  Q.    And showing you what has been marked as

16  Government's Exhibit C.

17          MR. MILES:  That is what you have here?

18          MR. MEHOCHKO:  It is.

19          May I approach, Your Honor?

20          THE COURT:  Yes, you may.

21  BY MR. MEHOCHKO:

22  Q.    I will ask you if you recognize that, sir?

23  A.    Yes, sir.  This is the spread sheet that I made

24  of the telephone records that I received related to

25  Mr. Miles cell phone as well as Felipe and Gordito's

 1 cell phone?

 2 Q.    That sheet summarizes the relevant contacts

 3 between Mr. Miles cell phone -- let me just ask you

 4 this.    The column on the left of the sheet says

 5 "Miles cellular"?

 6 A.    Yes.

 7 Q.    And that's the cellular number that Mr. Miles

 8 used to make the relevant call?

 9 A.    Either that or his personal cell phone.  He had

10 three cellular telephones.  One being a Nextel and

11 one being a different carrier.  Those were

12 Mr. Miles's cell phones.

13 Q.    Let me ask you this, that is the relevant phone

14 records that you pulled the data from?

15 A.    Yes.

16 Q.    The next column said, "call to or from."

17 That's the number that number was calling?

18 A.    Or received a call from.

19 Q.    And the third column is "call with" which there

20 is a slash of names there Felipe/Gordito to Pete?

21 A.    Yes, and that is relative to who is associated

22 with the telephone call that was in connection with

23 Mr. Miles cell phone according to the information

24 that he proved and based on the telephone calls that

25 were made during the controlled delivery.

1  Q.    And the following column, last column says
2  "date/time" and that is the day and time?
3  A.    That's correct, according to the telephone
4  records.
5  Q.    Those dates and times were obtained from the
6  telephone records, correct?
7  A.    Yes.
8  Q.    Now during the controlled delivery in Chicago,
9  did any of the officers ever authorize the defendant
10  to call the person he had identified as Gordito or
11  Felipe, the person who he set up the deal with in
12  California?
13  A.    Did we authorize for him to do so?
14  Q.    So.
15  A.    Under our direction, yes.
16  Q.    Was that Felipe and Gordito or was that just
17  Pete, the person to pick up the drugs in Chicago?
18  A.    Actually both.
19  Q.    Okay.  But no calls were authorized after 4:00?
20  A.    No, sir.
21  Q.    Now call your attention to that spread sheet
22  that you prepared.  I would like to direct your
23  attention to the last -- well the first line on the
24  spread sheet indicates that Mr. Miles began making
25  phone calls to Felipe or Gordito in approximately --

1  well, the date is March 28 of 2005 at 18:41; is that

2  correct?

3  A.    That is correct.

4  Q.    18:41 being military time, it will be 6:41

5  p.m.?

6  A.    That's correct.

7  Q.    According to that summary chart that you

8  prepared, the last phone call that Mr. Miles made

9  was to Felipe or Gordito and that was on May 17 of

10 2005 at 6:14 -- 16:14, being military time that be

11 would 4:16?

12 A.    4:14, actually.

13 Q.    4:14?  I'm sorry.  And that would have been

14 after the controlled delivery was terminated?

15 A.    Correct.

16 Q.    And that call was made after the permission

17 from the officers; is that correct?

18 A.    Yes.

19 Q.    You also reviewed the telephone record for that

20 associated phone number from Gordito and Felipe, did

21 you not?

22 A.    Yes, I did.

23 Q.    Were there any other phone calls either to or

24 from that telephone after the call from Mr. Miles on

25 May 17 of 2005?

1  A.    After May 17 of 2005 at 16:40 hours after the

2  call made by the defendant, there were no incoming

3  or outgoing calls made from the telephone number

4  identified for Felipe or Gordito.

5  Q.    That phone wasn't used again?

6  A.    Never again.

7  Q.    Would that be consistent with someone disposing

8  of the phone?

9  A.    Yes, sir.

10        MR. MEHOCHKO:   Those are my questions, Your

11  Honor.

12        THE COURT:   Mr. Miles, you may cross-examine

13  the witness.

14                    CROSS-EXAMINATION

15  BY MR. MILES:

16  Q.    Do you have any personal knowledge that I made

17  this phone call on the 17th?

18  A.    Personal knowledge, yes.

19  Q.    You saw me make this phone call?

20  A.    I was standing near you when you were making

21  the phone call.

22  Q.    You saw me make this phone call?

23  A.    I saw you on the telephone.

24  Q.    So you know that I personally made this phone

25  call?

1  A.   You were in possession of (626) 827-9937 in my

2  presence on May 17, 2005 at 16:14 hours.  You were

3  in my presence on that cell phone.

4  Q.   You personally heard the conversation on this

5  phone call, you know that I made the phone call?

6  You personally know this?

7  A.   I did not hear your conversation, no.

8  Q.   You personally know that I made this phone

9  call?

10  A.   Yes.

11        MR. MEHOCHKO:  Asked and answered.

12  BY MR. MILES:

13  Q.   You know who I was talking to, you know which

14  phone I was using?

15  A.   According to cell phone records, yes, I do.

16  What number your telephone called on the 17th at

17  16:14 hours.

18        MR. MILES:  Your Honor, he is not responding

19  to my question.  Would you direct the witness to

20  answer whether he personally knows that I was

21  talking to Felipe or Gordito at the time of this

22  phone call was made?

23        THE COURT:  I think that he has answered it.

24  BY MR. MILES:

25  Q.   According to this sheet, this phone call was

1  made on 5/17; is that correct?

2  A.    Yes.

3  Q.    Where was I on 5/17 on 4:14?

4  A.    In the parking lot of the Hampton Inn on

5  Cicero, Illinois.

6  Q.    I wasn't in the Henry County Jail at that time?

7  A.    No.

8  Q.    What day was I arrested?

9  A.    On that day.

10  Q.    I was arrested on the 15th, correct?

11  A.    I'd have to review.

12  Q.    There were phone calls made on the 16th?

13  A.    To?

14  Q.    To anybody.

15  A.    From the cellular telephone, no.

16  Q.    According to this, from any cell telephone?

17  A.    I would have to review all of the other

18  reports.

19  Q.    What day was the attempted delivery?

20  A.    I'd have to review my reports again for the

21  dates, I'm not sure.

22  Q.    This controlled delivery was made on the 16th

23  of May, correct?

24  A.    I would have to look at a report.

25  Q.    This phone call was made the day after the

1  controlled delivery was made.

2  A.    I can't answer that until I can verify the

3  dates of the attempted controlled delivery.

4  Q.    Who put me in the jail?

5  A.    I'm not sure.  I believe it was a deputy from

6  Henry County.  No, no.  Illinois state trooper

7  actually transported you, but I'm not sure who

8  actually booked you in.

9         MR. MILES:  I have no further questions for

10 this witness, Your Honor.

11        THE COURT:  Any redirect.

12        MR. MEHOCHKO:  Yes, Your Honor.

13                  REDIRECT EXAMINATION

14 BY MR. MEHOCHKO:

15 Q.    Agent Coulter, you prepared that spread sheet

16 for purposes of trial demonstrative?

17 A.    Yes.

18 Q.    The purpose of that demonstrative was to show

19 the contacts between the defendant Felipe, Gordito

20 and Pete; is that correct?

21 A.    Yes.

22 Q.    Okay.  Now I also asked you to prepare a photo

23 chart, a diagram depicting that same data from the

24 spread sheet, correct?

25 A.    Correct.

1 Q. And originally that spread sheet and that
2 photograph included all telephone calls that were
3 indicated between Mr. Miles, Felipe, Gordito and
4 Pete, correct?
5 A. Yes.
6 Q. And that included the calls during the
7 attempted controlled delivery, correct?
8 A. Yes.
9 Q. And then that sheet was modified to take out
10 the calls that were authorized by the controlled
11 delivery; is that correct?
12 A. Correct.
13 Q. What was the purpose of that?
14 A. Just to show the personal contact that
15 Mr. Miles would have had with Felipe or Gordito or
16 Pete beyond what we authorized or were doing during
17 the controlled delivery. Those would have been
18 outside of our controlled contacts between the
19 defendant and Gordito and Felipe or Pete.
20 Q. It wouldn't have been fair to show the calls
21 that you were directing the defendant to make and
22 use those as proof of contacts between Pete and
23 Gordito, correct?
24 A. Correct.
25 Q. The idea was to show contacts within the

1  context of the conspiracy before the defendant was

2  arrested, correct?

3  A.   Yes.

4  Q.   And you actually have -- Your Honor, could I

5  have a quick moment to review some documents?

6           THE COURT:  Okay.  Mr. Mehochko, take your

7  time.  I have to do another phone call right now.

8           THE CLERK:  Actually, it is John's case.

9           THE COURT:  Okay.  Go ahead.

10           Mrs. Darrow, could you substitute for

11  Mr. Mehochko on this, I think it is a Rule 35

12  telephone call at 1:00?

13           MRS. DARROW:  Yes, Your Honor.

14           THE COURT:  All right.

15           MR. MEHOCHKO:  Actually, Judge, on second

16  thought I don't even think that I need any questions

17  for the witness.

18           THE COURT:  Well, we are going to take a

19  break anyway.  So we will take about a five minute

20  recess.  We will be right back.

21           Just one minute.

22           Mr. Miles, do you have anymore questions for

23  this agent?

24           MR. MILES:  No.

25           THE COURT:  All right.  I can step down.

 1          (The court took a recess.)

 2          THE COURT:  The Court finds the advisory

 3 guideline range as follows:  Based on a total

 4 offense level of 40, a Criminal History Category of

 5 Roman Numeral IV that results in an imprisonment

 6 range of 360 to life.  The Court would point out

 7 there is a mandatory minimum of ten years on each of

 8 Counts I and II.  The supervised release range is

 9 five years per count.

10          Fine range is 25,000 to $8 million.

11          There is a special assessment of $200.

12          And there is no pecuniary restitution.

13          Based on the Court's rulings here today,

14 does the Government have any objection to the

15 guideline range as found by the Court?

16          MR. MEHOCHKO:  No objection, Your Honor.

17          THE COURT:  Do you, Mr. Miles?

18          MR. MILES:  Just the objections that I filed

19 in my affidavit, Your Honor.

20          THE COURT:  All right.  Anything in

21 aggravation by the Government, Mr. Mehochko?

22          MR. MEHOCHKO:  No, Your Honor.

23          THE COURT:  Anything in mitigation,

24 Mr. Miles?

25          MR. MILES:  Hold on one minute.  No.

1      THE COURT:  Government's comment on
2  sentencing?
3      MR. MEHOCHKO:  Yes, Judge.
4      Your Honor, as the Court is certainly well
5  aware 18 U.S.C. 3553 is really the touchstone now
6  for evaluating the defendant's sentence in light of
7  reasonableness.  The guidelines of course are
8  advisory but they are not binding.  The advisory
9  guideline range in this case is 360 to life.  The
10 Government believes is an appropriate range given
11 this defendant's conduct, both his offense conduct
12 and his post-offense conduct, particularly his
13 behavior at trial and before this Court.
14      Looking at the factors in 3553, in
15 evaluating the nature and circumstances of the
16 offence and the history and characteristics of the
17 defendant, it is important to consider, Your Honor,
18 the enormous amount of drugs involved in this case.
19 You could get rid of half of the drugs in this case
20 and still be at a level 38 on the guideline chart,
21 an enormous amount of drugs.  In fact, you can get
22 rid of the cocaine entirely and would still be at
23 the top of the guideline chart.  Millions of dollars
24 worth of drugs in this case.  Enormous amount of
25 poison on its way to the community but for the

1 defendant being stopped by Trooper Thulen on the
2 side of the road that day.

3      The Government would also submit that this
4 is not the first time that the defendant did this.
5 There is evidence that is listed in the Pretrial
6 Services Report they overheard discussions referred
7 to "leaving the RV where you left it last time, and
8 the last time you did this," that is a conversation
9 between Pete and the defendant Harry Miles.   The
10 contact of Gordito extending farther back to what
11 the defendant admitted to the officers.

12      And in fact something else that just turned
13 up in the PSR, paragraph 51 the defendant's mother
14 said that he had about doing this for months.  She
15 claimed that he had gotten a job delivering RVs
16 around the country.  And he told her that he had
17 been in South Carolina approximately a month ago.

18      So I would submit -- and of course, Your
19 Honor, as the Court is well aware the kind of people
20 that have 76 kilos of cocaine and eight pounds of
21 almost pure methamphetamine are not going to simply
22 turn it lose to somebody that they never met and
23 never dealt with and just hope that he is honest
24 enough to get it where it is going.

25      They are dealing with people they know and

they are dealing with people they have dealt with

before and they are dealing with people that,

frankly, they know they can believe are going to get

it there.   So I don't think this is the first time

that the defendant did this.   There is also the fact

that he stood to gain quite a bit of money.   He told

the officers that he was being paid $12,000 for this

trip.   But they already talked about future trips,

he was going to make a hundred thousand dollars for

the next drug run.   He called it running the circuit

between various cities and dropping off drug

deliveries as he went.

He was getting paid a lot of money for this,

Your Honor, and I think that that is an important

thing to consider.   He is not like some of the

people that we see characterized as drug mules who

are really kind of poor pathetic type people that

are on their last leg and trying to make a quick

buck or a couple hundred or maybe a couple thousand

dollars.   This defendant was in it for the money and

he was being well paid.

I would also point the Court to the

defendant's criminal history which I would submit is

just a further indication of what I think we've all

seen in this courtroom here today which is that the

1 defendant just doesn't think that the rules that the
2 rest of society plays by should apply to him:
3 bankruptcy fraud, bank fraud, false declaration in
4 bankruptcy court, nonsufficient funds. He writes
5 $1.8 million in bad checks. He writes a $5,518
6 check to a funeral home to cover funeral expenses, a
7 nonsufficient funds check. He gets probation on his
8 bankruptcy fraud, then he violates that by going out
9 and committing more crimes, and then here he is
10 again less than two years later. Now he is
11 graduated to a drug trafficker. He doesn't think
12 that the rules apply to him. He doesn't think that
13 he should have to live by the laws that the rest of
14 society lives by. He's advanced the absurd argument
15 that this Court has no jurisdiction over him. The
16 Court I think has seen that for what it is.

17 But it is just another indication the
18 defendant thinking that he can twist things and worm
19 things the way that he wants them to do and that he
20 doesn't have to answer to the rules that the rest of
21 us do. And a perfect indication of that is the
22 defendant's testimony at trial. He sat right in
23 that chair and lied right to these 12 people in the
24 jury, lied to the Court, lied to all of us about the
25 ridiculous story that he spun out. And quite

1  frankly, it's pretty galling for the likes of Harry

2  Miles to accuse people like Clint Thulen and Floyd

3  Blanks and the other troopers of the state police of

4  the absurd outrageous conspiracy that he did.  He

5  claimed that Trooper Thulen lied about everything,

6  that Trooper Thulen constructed this hidden

7  compartment in his RV, that Trooper Thulen somehow

8  found all of this cocaine and put it in there for no

9  apparent reason other than to get Harry Miles who he

10  has never met before.  That's pretty insulting and

11  that is pretty outrageous.  And I think it gives

12  this Court a pretty good insight into what kind of a

13  person the defendant is.  He doesn't think the rules

14  apply to him.  He thinks he should be able to do

15  whatever he wants to do.

16      There is also a need for this Court's

17  sentence to reflect the seriousness of the offense,

18  promote respect for the law, and provide just

19  punishment for the offense.  It is hard promoting

20  respect for the law.  I mean, I am not sure that

21  anything the Court does here today is ever going to

22  promote respect for the law with Mr. Miles.  He has

23  his own agenda.  I don't think he cares what anyone

24  else thinks.  I don't think he cares what the law

25  says.  I don't think he cares, as I said, about the

1 rules of civilized society.  He is going to do what
2 he wants to do.

3        But I think this Court can send a message
4 about what kind of conduct it will not tolerate;
5 that the outrageous perjury that the defendant's
6 perpetrating here and destructive conduct that he
7 calls for in this case, calls for a very severe
8 sentence in addition to the enormous amount of drugs
9 and the enormous amount of harm that that would have
10 done had it gone out in the community.

11        This defendant didn't need to do this.  The
12 PSR sets out his employment history.  Apparently he

15 a year, according to the PSR.  It is not as if he
16 needs the money.  He comes from a well off family
17 which he stole from, that's in paragraph 41 of the
18 PSR, the family business.  He doesn't need to do
19 this.  Not that needing to do it is an excuse, but
20 this defendant doesn't even have that excuse.  He
21 just doesn't want to work.  He doesn't want to make
22 an honest living.

23        There is also a need to protect the public
24 from the future crimes of the defendant.  And I
25 think that the defendant's criminal history in this

case says it all.  He doesn't get it.  He doesn't care.  He has been through the court system.  He has been through state court.  He has been through federal court.  He knows enough to tell the troopers on the side of the road that he didn't want to go back to state court.

He has been given opportunities, wake up calls, if you were, that his conduct is not appropriate and he will be punished.  He just doesn't care.  He committed this offense less than two years after released from, I believe it was state prison.  He doesn't think that the rules apply to him.  He thinks he can do whatever he wants to do.

In short, Your Honor, I would submit in this case there are no really no mitigating factors that weigh in favor of anything other than a guideline sentence for this defendant.  He has not accepted responsibility.  He continues to shirk responsibility for his crimes.  I question why he's pursued the bizarre conspiracy theory that he has pursued but again I guess he thinks the rules don't apply to him.

Again the Government submits that a guideline sentence would be appropriate in this case

1  and would adequately punish the defendant for both

2  his criminal conduct and his perjury at trial, as

3  well protecting the public from future crimes that I

4  would submit are inevitable if the defendant is

5  released from prison.  Thank you.

6          THE COURT:  Thank you, Mr. Mehochko.

7          Comment on sentencing, Mr. Miles?

8          MR. MILES:  I have got a written statement I

9  would like to read in its entirety, Your Honor.

10         I object to this court denying my motion for

11 an evidentiary hearing which I have a right to under

12 Rule 35(c)(3)(D) as stated in the United States v.

13 Pless, 982 F.2d 1118, Seventh Circuit 1992, which

14 reads in part page 1127 to 1128:

15         "Due process entitles defendants to fair

16 sentencing procedures especially a right to be

17 sentenced on the basis of accurate information, see

18 United States v. Eschweiler, 782 F.2d 1385, 1387,

19 Seventh Circuit 1986.  If the defendant raises a

20 possibility of a reliance on misinformation in the

21 PSI, the Court must provide an opportunity to rebut

22 that report.  United States v. Pettito, 767 F.2d

23 607, 611, Ninth Circuit 1985.  That may take a

24 number of forms by allowing defendant and defense

25 counsel to comment on the report or to submit

1 affidavits or other documents or by holding an

2 evidentiary hearing.  United States v. Pless, 982

3 F.2d 1118, 1127-1128, Seventh Circuit, December 18,

4 1992.

5       I object to this Court denying my subpoena

6 duces tecum for certified copies of all transcripts

7 of all testimony given at the pretrial suppression

8 hearing and all testimony given at trial by Trooper

9 Kevin Winslow, Sergeant Floyd Blanks, Deputy Brett

10 Dynes, and DEA Agent Russell Coulter for the bad

11 faith purpose of preventing me from being able to

12 submit page and line designations of their trial

13 testimony which clearly rebuts and proves that

14 Trooper Thulen's testimony was and is false in

15 violation of my rights to attach certified

16 transcripts to my PSR report in violation of Rule

17 32(c)(3)(D) as stated in United States v. Pless,

18 982, F.2d 1118, Seventh Circuit 1992.

19       I object to this Court not finding that

20 Trooper Thulen violated my rights by seizing my

21 warning tickets without my permission and then using

22 that illegally obtained evidence to contact other

23 officers in violation of U.S. Cecolini, 435 U.S.

24 268.

25       I object to this Court improperly finding

probable cause based on Trooper Thulen's perjured

testimony that his dog alerted and that Sergeant

Floyd Blanks saw his dog alert when the fact is that

Sergeant Floyd Blanks testified that he did not in

fact witness that the dog ever alerted, but rather

that Trooper Clint Thulen told him the dog alerted.

I object to the fact that this Court failed

to make a finding that Trooper Clint Thulen's

testimony that only he, the trained handler, could

recognize his dog's alert was too subjective of a

standard and that the Court must have an objective

standard that we could all see on the video a was

held in U.S. v. Heir, 107 F.Supp.2d 1088 -- excuse

me -- District Court of Nebraska, 2000.

THE CLERK:  Mr. Miles, could you speak a

little bit slower for the reporter please.

MR. MILES:  I request that this sentencing

hearing be set until I'm provided with copies of all

transcripts of all witnesses' testimony and that I

be granted an evidentiary hearing to clear up the

conflicting testimony of all officers.

I object to this federal court illegally

taking jurisdiction within the State of Illinois

without submitting any proof that the legislature

ever consented to the ceding of land which included

1 that portion of the highway where I was arrested by
2 Trooper Thulen and for failure to provide a copy of
3 the Act of Congress accepting the cession of said
4 land to the U.S. Government as required by Article
5 1, Section 8, Clause 17 of the United States
6 Constitution which reads:

7       To exercise legislation in all cases
8 whatsoever, over such district, not exceeding ten
9 miles square, as may, by cession of particular
10 states, and the acceptance of Congress become the
11 seat of the government of the United States, and to
12 exercise like authority over all places purchased by
13 the consent of the legislature of the state in which
14 the same shall be, for the erection of forts,
15 magazines, arsenals, dock yards, and other needful
16 buildings.

17       I object to the federal court illegally
18 taking jurisdiction within the State of Illinois
19 without submitting any proof that the legislature
20 ever consented to the ceding of land which included
21 that portion of the highway where I was arrested by
22 Trooper Thulen for failure to provide a copy of the
23 Act of Congress accepting the cession of said land
24 to the U.S. Government or failure to provide any
25 proof of purchase or receipt by the U.S. Government

1  as required by 18 United States Code, Section 7(3)
2  which reads:

3       The term special maritime and territorial
4  jurisdiction of the United States, as used in this
5  title includes:

6       Any land reserved or acquired for the use of
7  the United States, and under the exclusive or
8  concurrent jurisdiction thereof, or any place
9  purchased or otherwise acquired by the United States
10 by consent of the legislature of the state in which
11 the same shall be, for the erection of a fort,
12 magazine, arsenal, dockyard, or needful building.

13      From the outset of this action I have not
14 consented to anything except under threat, duress,
15 and coercion as is occurring here.

16      Several times this Court has admonished me
17 for lack of respect for this Court.  I was taught
18 from an early age that respect has to be earned, it
19 is not something to be just given to anyone.  How
20 can you respect someone who violates their own oath
21 of office with impunity and knowingly violates a
22 defendant's right to the due process of law?  How
23 can you respect someone who appears before them that
24 they do not have to go by the law that regulates
25 this Court?  How can you respect someone who has

1  ignored, disregarded and trampled on the

2  Constitution, statutes and clearly established case

3  law that you have sworn to uphold and protect?

4        It is obvious to all who have watched what

5  has happened in this case that you have not even

6  considered, let alone read any of the motions that I

7  have filed in this case and have not issued any

8  written findings of facts and conclusions of law as

9  to why you denied any and/or all of the motions that

10  I have filed.

11        It is undisputed that you just rubber

12  stamped the U.S. Attorney's misquotes and

13  misstatements of the speedy trial case law which

14  hold that although a judge need not

15  contemporaneously enter his ends of justice findings

16  at the same time he or she grants a continuance and

17  that he can enter his findings nunc pro tunc at a

18  late date, the case that the U.S. Attorney cited

19  also went on to say that the judge could not nunc

20  pro tunc enter his ends of justice findings after or

21  beyond the time that the continuance was granted had

22  expired which it did in this case.  The case that

23  the U.S. Attorney cited clearly hold that you cannot

24  enter your ends of justice findings nunc pro tunc

25  after the date the continuance or extension of time

1 had expired or ran out and it is therefore

2 undisputed that my speedy trial rights have been

3 violated.

4        I object to the unfair treatment that I have

5 received in your court such as your prejudicial

6 statements that if I didn't like your rulings

7 without legal reasons and findings of fact that I

8 could take it up with the appeals court in violation

9 of U.S. v. Heath, No. 04-4305 decided May 15,2006

10 citing United States v. Booker, 543 U.S. 220, 2005

11 and United States v. Hawk, 434 F.3d 959, Seventh

12 Circuit 2006.

13        I object that you have not provided any

14 written finding of fact and conclusions of law as to

15 why you denied any and/or all of my filed pretrial

16 motions and all of my motions for acquittal in

17 violation of U.S. v. Heath, Number 04-4305 decided

18 May 15, 2006 citing United States v. Booker, 543

19 U.S. 220, 2005 and United States v. Hawk, 434 F.3d

20 959, Seventh Circuit 2006.

21        I object to your not providing these written

22 findings of facts and conclusions of law for all of

23 those motions in a timely manner so as to prevent me

24 from having a record for appeal which I could

25 dispute with my own findings rebutting or

1  challenging your findings that I would have demanded

2  on being attached to my Presentence Report to

3  preserve the record for appeal in violation of U.S.

4  v. Heath, Number 04-4305 decided May 15, 2006 citing

5  United States v. Booker, 543 U.S. 220, 2005 and

6  United States v. Hawk, 434 F.3d 959, Seventh Circuit

7  2006.

8       I therefore request that you provide written

9  findings of fact and conclusions of law for each and

10 every pretrial motion and for each and every motion

11 for acquittal and give me reasonable amount of time

12 to respond with my own written findings of fact and

13 conclusions of law rebutting or challenging yours

14 and that both your written findings and mine are to

15 be attached to my Presentence Report as required by

16 Rule 32(c)(3)(D), U.S. v. Heath, Number 04-4305

17 decided May 15, 2006 citing United States v. Booker,

18 543 U.S. 220 2005, and United States v. Hawk, 434

19 F.3d 959 Seventh Circuit 2006.

20      I also request that you set this hearing

21 over to another date in order that I be provided

22 certified copies of all pretrial transcripts of all

23 the officers involved in this case, Trooper Clint

24 Thulen, Trooper Kevin Winslow, Sergeant Floyd

25 Blanks, Deputy Brett Dynes, and DEA Agent Russell

1 Coulter, so that I can submit written line and page

2 designations of their testimony which clearly shows

3 that Trooper Thulen's testimony is false.

4     I do not consent to any jail time.

5     I do not consent to any fines.

6     I do not consent to any probation.

7     I do not consent to any punishment of any

8 kind.

9     I do not consent to any jail time, fines,

10 probation or punishment of any kind.

11     I do not consent to this federal court

12 taking jurisdiction inside the territorial

13 boundaries of the State of Illinois in original

14 jurisdiction and outside the seat of government as

15 specified at 4 United States Code Sections 71 & 72

16 and Federal Rules of Criminal Procedure Rule 54.

17     I do not consent to this federal court

18 taking jurisdiction within the State of Illinois

19 over that portion of the public highway that has

20 never been ceded to the United States Government and

21 accepted by any Act of Congress and nor was that

22 section of the highway ever purchased by the United

23 States Government as required by Article 1, Section

24 8 of the Federal Constitution.

25     I do not consent to this Federal Court

1 taking jurisdiction within the territorial
2 boundaries of the State of Illinois when said
3 portion of the public highway is not within any
4 federal area located within the exterior boundaries
5 of the state in violation of U.S. v. Lopez, 514 U.S.
6 549, 115 Supreme Court 1624, 1995.

7           Excuse me.

8           I object to this federal court sentencing me
9 without proving it had or has subject matter
10 jurisdiction.

11           I object to this federal court giving me any
12 sentence except complete freedom to go live in my
13 home and to have complete freedom to and from work
14 at my pleasure and convenience at any hours or time
15 I choose to schedule. Or in the alternative, I
16 request that I be sentenced to go live in the
17 Playboy mansion with Hugh Hefner and all the Playboy
18 Bunnies.

19           THE COURT: Mr. Miles, before I impose
20 sentence, do you have anything else to say?

21           MR. MILES: Not at this time.

22           THE COURT: All right. Pursuant to the
23 Sentencing Reform Act of 1984 and in consideration
24 of the purposes of sentencing as set out in Section
25 3553(a) of Title 18, the defendant Harry Edwin Miles

1 is hereby committed to the custody of the Bureau of

2 Prisons for a period of 360 months for each of

3 Counts I and II to be served concurrently.

4         The Court finds that the defendant is a

5 dangerous man.  He is a bright man but he is using

6 his intelligence for criminal purposes.  And based

7 on his history and characteristics, the Court

8 believes he is a danger to the public.  And the

9 public needs protection from him, and to reflect the

10 seriousness of the offense, and to promote respect

11 for the law, and to provide just punishment, and to

12 deter others who may be like-minded, the Court feels

13 that the low end of the guideline range is

14 appropriate.  And to -- frankly, the Court has not

15 been able to find any basis in the record to depart

16 from the guideline range.

17         And the Court shares the prosecution's

18 outrage at the preposterous and incredible charges

19 that the defendant has made during the course of

20 this trial.  And the Court has, in his mind,

21 attempted to lean over backwards to be patient and

22 considerate and responsive to this defendant's

23 antics throughout the course of this trial and

24 beyond.  But they aren't appreciated.  And the

25 defendant has chose to castigate the Court for its

1  handling of this case.  I'm sorry he feels this way

2  because I have done my best to be fair in this case

3  despite his machinations.

4          The Court would not impose a fine.

5          Following release from custody, the

6  defendant shall serve a five year term of supervised

7  release on each of Count I and II to be served

8  concurrently.

9          Within 72 hours of his release from custody,

10 he is to report in person to the Probation Office in

11 the district to which he is released.

12         While on supervised release, the defendant

13 shall not commit another federal, state or local

14 crime nor possess a controlled substance.  He must

15 submit to one drug test within 15 days of placement

16 on supervised release and two drug tests thereafter

17 as directed by the Probation Officer.

18         Pursuant to the Justice for All Act of 2004,

19 the defendant shall cooperate in the collection of

20 DNA as directed by the Probation Officer or the

21 Bureau of Prisons.

22         In addition to the standard conditions of

23 supervised release as recommended by the United

24 States Sentencing Commission, the Court would impose

25 the following special conditions:

1          One, if the defendant is unemployed after
2    the first 30 days of supervised release, or if
3    unemployed for 30 days after termination or layoff
4    from employment, he must perform at least twenty
5    hours of community service work per week at the
6    direction of and in the digression of the Probation
7    Officer until gainfully employed or reemployed.
8          And two, he is not to own, purchase, or
9    possess a firearm, ammunition or other dangerous
10   weapon.
11         A special assessment of $200 is due and
12   payable immediately.
13         The Court would recommend to the Bureau of
14   Prisons that the defendant serve his sentence in a
15   facility that will allow him to expose you to
16   educational and vocational opportunities.  And as
17   close to his family in West Covina, California as
18   possible.
19         MR. MILES:  Can the Court recommend Terminal
20   Island in California, that is the closest.
21         THE COURT:  No.
22         The defendant is advised you have a right to
23   appeal this sentence by filing a written notice of
24   appeal within ten days of entry of judgment, which
25   will be today I anticipate.  If you feel that you're

1   unable to accomplish that with the assistance of

2   your stand-by counsel, you can ask the clerk to

3   prepare and file a notice of appeal for you and the

4   clerk will do so.  If you cannot pay the cost of an

5   appeal, you have the right to ask relief to appeal

6   without payment of cost.  And if you're found to be

7   eligible, costs will be waived.

8        The defendant is remanded to the custody of

9   the marshal to await execution of the sentence.

10       And this hearing is adjourned.

11       MR. MILES:  Your Honor, I have already been

12  found indigent in an earlier hearing, so would the

13  appellate fees already be waived?

14       THE COURT:  I suppose as far as your filing

15  notice of appeal.  You can file a notice of appeal

16  without payment of fees, yes.

17       MR. TASEFF:  Your Honor, with respect to the

18  appeal rights, I have advised Mr. Miles that as his

19  standy-by counsel I would prepare the notice of

20  appeal and jurisdictional docketing statement today.

21  I already got most of it prepared.  I will file that

22  this afternoon before I leave for Peoria so that his

23  appellate rights are preserved.

24       He has indicated to me that he wishes to

25  retain his pro se status and that he wants to

1 prosecute his appeal pro se.

2 So at this time I would ask that the Court

3 relieve the office the federal public defender of

4 his duties as standy-by counsel and his

5 representation of Mr. Miles in that capacity will

6 terminate with our filing notice of appeal that I

7 will have e-file under his signature so that the

8 appellate court can know from the review of the

9 proceedings that he is pro se on appeal which we've

10 confirmed with the Seventh Circuit, they will allow

11 him to do this.  They will allow him to be pro se.

12 I do not know of any provision however with respect

13 to one having any stand-by counsel for purposes of a

14 pro se litigant on appeal.  So the Seventh Court

15 assume, is going to deal with that.  But the Court

16 did find a finding of indigency with the respect to

17 transcripts that were requested so I would ask that

18 on his behalf that he would be able to appeal

19 informa pauperis and that costs will be waived and

20 that he will be allowed to proceed pro se consistent

21 with having the notice of appeal filed this

22 afternoon.

23 THE COURT:  Upon filing your notice of

24 appeal for Mr. Miles, your appointment by this Court

25 as stand-by counsel is terminated.

1        As I indicated again, I believe Mr. Miles

2   would be entitled to file his notice of appeal

3   informa pauperis and that status will also allow him

4   to obtain free transcripts if he is prosecuting his

5   appeal himself.

6        And hearing is adjourned.

7        MR. MEHOCHKO:  Judge, as long as we are

8   talking about appeals, it just occurred to me that I

9   probably should put on the record for appeal, the

10  defendant has made some pretty frivolous allegations

11  in his PSR about Brady material being withheld or

12  discovery being withheld.  I just wanted to put it

13  on the record that the Government has provided

14  extensive discovery to the defendant and in several

15  of those discovery letters made a point in telling

16  the defendant and stand-by counsel everything that

17  we have is available for you to look at.  Simply

18  make an appointment and let us know and that will be

19  done.  I just want to make sure that is clear on the

20  record because of some of the claims that the

21  defendant has been making.

22        MR. MILES:  Being able to look at it is a

23  ludicrous statement when I'm locked up.

24        THE COURT:  Well the Court has not made any

25  finding that there has been any violation of Brady

1 in this case.

2          And the hearing is adjourned and the marshal

3 is to do his duty.

4          *          *          *          *          *

5

6     I certify that the foregoing is a correct

7 transcript from the record of proceedings in the

8 above-entitled matter.

9

10

11 _____          _____

12 NANCY MERSOT                 DATE

13

14

15

16

17

18

19

20

21

22

23

24

25